The defendant was arraigned before me on September 5, 2025, on several charges resulting from events that allegedly took place on April 28, 29, and 30, 2024, and at the Woburn District Court almost one year later, on April 14, 2025. At arraignment, the Commonwealth moved for the defendant’s continued pretrial detention under G. L. c. 276, § 58A (“Section 58A”). See Commonwealth’s Motion for Order of Pre-Trial Detention or, in the Alternative, Conditional Release Based on Dangerousness (“motion for pretrial detention” or “motion”). The defendant opposes the motion on the grounds that he is not accused of a qualifying offense under G. L. c. 276, § 58A(1). Alternatively, the defendant contends that there are conditions of release that “will reasonably assure the appearance of the . . . [defendant in court] and the safety of any other person and the community         ” G. L. c. 276, § 58A(1). Because  I  conclude  that  the defendant has not been charged with a qualifying offense under Section 58A, I am constrained to deny the Commonwealth’s motion for pretrial detention. Because I am further persuaded that a bail amount greater than the defendant can afford is necessary to assure his  appearance
 
                                                            -1-
 
in court, I order the defendant held on a cash bail of $100,000 (one hundred thousand dollars).
BACKGROUND
            The charges in this case arise out of an assault that the defendant allegedly committed against his neighbor last year. The indictment alleges that, on April 28, 2024, the defendant, who lived in a housing development in Stoneham, sprayed his neighbor with pepper spray in the common laundry room. At the time, the neighbor had an active restraining order against the defendant. Over the ensuing two days, the defendant pepper sprayed two Stoneham Police officers who were attempting to arrest him for the similar assault on his neighbor on April 28, 2024. The defendant is also charged with assaulting officers during the booking process and in his cell at the Stoneham Police Department.
            On April 14, 2025, the defendant arrived at the Woburn District Court for hearings on the open cases from late April 2024. The defendant allegedly approached the courthouse wearing a helmet and a gas mask and carrying pepper spray. When a court officer saw the defendant attired in this manner, the court officer tried to stop him from entering the courthouse. The defendant then sprayed the court officer with pepper spray. The defendant entered the courthouse, where he was confronted by more court officers. The officers took the defendant to the ground and attempted to restrain him. As he was struggling with the officers, the defendant sprayed several of them with pepper spray before they could bring him under control. In the aftermath of the assault, four court officers were taken by ambulance to area hospitals for treatment of the effects of having been pepper sprayed.
            The defendant was arrested and charged with several offenses in connection with the April 14, 2025, courthouse assaults. His case was transferred from the Woburn District Court to the Lowell District Court, where, after a hearing, he was ordered held in pretrial detention under Section 58A.
 
                                                            -2-
 
DISCUSSION
1. Detention Under G. L. c. 276, § 58A
            In its motion for pretrial detention, the Commonwealth asserts that the defendant is subject to the provisions of Section 58A because he is charged with making a bomb threat (in violation of G. L. c. 269, § 14(c)), which the Commonwealth alleges is “a felony which has as an element the use, attempted use, or threatened use of physical force against the person of another.” Mtn. at 1.[1] Because it is possible to commit the crime of making a bomb threat without using, attempting to use, or threatening to use physical force ”against the person of another,” G. L. c. 258, § 58A(1) (emphasis supplied), however, the offense does not meet the statutory criteria for commitment under Section 58A. I, therefore, may not order the defendant held in pretrial detention.
            The pretrial detention statute, G. L. c. 276, § 58A(3), permits the pretrial detention of certain offenders, provided that a judge concludes by clear and convincing evidence that the offender poses a danger to one or more persons and that no less-restrictive conditions of release will protect the public against the danger posed. The statute’s provisions apply to an offender charged with “a felony offense that has as an element of the offense the use, attempted use or threatened use of physical force against the person of another or any other felony that, by its nature, involves a substantial risk that physical force against the person of another may result         ” G. L. c. 276, § 58A(1). This language is often referred to as the statute’s “force clause.” Campbell v. Commonweatlh, 494 Mass. 750, 753 (2024), quoting Commonwealth v. Vieira, 483 Mass. 417, 422 (2019). The statute also lists several offenses that can be the basis for pretrial detention. Neither making  a  bomb  threat  nor  any  of  the  other  offenses  with  which  the  defendant  is
 
--------------------------------------------
 
            [1] Citations to the Commonwealth’s Motion for Order of Pre-Trial Detention or, in the Alternative, Conditional Release, Based on Dangerousness are denoted by the abbreviation, “Mtn.,” followed by a page citation.
 
                                                            -3-
 
charged in the instant indictment is not one of those specifically listed offenses. Thus, for me to order the defendant held under Section 58A, I would have to conclude that making a bomb threat is a felony “that has as an element . . . the use, attempted use or threatened use of physical force against the person of another.” G. L. c. 276, § 58A(1).
            In determining whether a felony is a predicate offense under the pretrial detention statute’s force clause, the court “take[s] a ‘categorical approach.’” Campbell, 494 Mass. at 753, quoting Vieira, 483 Mass. at 422. Thus, a felony is “a predicate for purposes of [G. L. c. 276,] § 58A ‘if, and only if, the elements of the offense always fall within the ambit of the force clause.’” Id., quoting Commonwealth v. Escobar, 490 Mass. 488, 496 (2022). In making that determination, I must “consider ‘the most innocent conduct’ criminalized by the applicable statute ” Id. at 754, quoting, inter alia, United States v. Jackson, 32 F.4th 278, 284 (4th Cir. 2022), cert. denied,    U.S.     , 143 S. Ct.     1026. “This inquiry focuses on the elements of the offense, not the particular facts surrounding the offending conduct.” Id. at 753-754, citing Escobar, 490 Mass. at 496.
            As relevant to this analysis, section 14 of G. L. c. 269 makes it a crime to “willfully communicate[] or cause[] to be communicated . . . a threat . . . that a dangerous chemical . . . agent, a poison . . . or any other device, substance or item capable of causing death, serious bodily injury or substantial property damage, will be used at a place or location, or is present or will be present at a place or location, whether or not the same is in fact used or present . . .” if such threat “caus[es] either the evacuation or serious disruption of a . . . facility        ” G. L. c. 269, § 14 (b)©. From this definition, it is clear that a person may commit the offense of making a bomb threat without threatening the “use . . . of physical force against the person of another” or creating “a substantial risk that physical force against the person of another may result . . . .” G. L. c. 276, § 58A(3).
            For example, a person who telephoned police to notify them, falsely, that he had planted an explosive device in a long-abandoned building in a remote part of town and
 
                                                            -4-
 
advising police to make sure that no one was in the building – resulting in the police sweeping the building to make sure that no one was inside and evacuating neighbors in a (reasonable) exercise of caution – could be convicted of making a bomb threat under G. L. c. 269, § 14©. Such an offense would involve neither force, nor the threat of force, “against another” nor “a substantial risk that physical force against the person of another may result.” G. L. c. 276, § 58A(3).
            Of course, in the familiar bomb-threat scenario, the threat is to do harm to others. The categorical approach dictated by the case law, however, requires that a court look beyond the most common, or familiar, forms of statutory violation. The case law requires me to “consider ‘the most innocent conduct’ criminalized by the applicable statute . . . .” Campbell, 494 Mass. at 754, quoting, inter alia, United States v. Jackson, 32 F.4th 278, 284 (4th Cir. 2022), cert. denied,  U.S.   , 143 S. Ct. 1026. The hypothetical threat (set out in the preceding paragraph) to destroy a remote, unoccupied structure could well create fear and disruption in the community. It would not, however, involve either the threat of force, “against another” or “a substantial risk that physical force against the person of another may result.” G. L. c. 276, § 58A(3). Put simply, some bomb threats that violate the statute do not satisfy the requirements of Section 58A’s force clause. A violation of G. L. c. 269, § 10©, therefore, is not a qualifying offense under Section 58A.
            The Commonwealth has not sought the defendant’s detention based on the several assaultive charges that he faces, including the charges of assault and battery on a public official. This is likely because the Supreme Judicial Court has held – either in applying Section 58A or in related contexts – that assault and battery, assault and battery by means of a dangerous weapon, and assault and battery on a public official – do not satisfy the force clause. See Commonwealth v. Beal, 474 Mass. 341, 352 (2016) “assault and battery on a public employee is not a violent crime” under the Massachusetts armed career criminal act, G. L. c. 269, § 10G) (abrogated on other
 
                                                            -5-
 
grounds by Commonwealth v. Guardado, 493 Mass. 1, 9-10 (2023)), quoting Commonwealth v. Eberhart, 461 Mass. 809, 819 (2012) (abrogation on other grounds recognized by Commonwealth v. Perez, 100 Mass. App. Ct. 7, 15 n.6 (2021); Commonwealth v. Escobar, 490 Mass. 488, 500 (2022) (assault and battery by means of a dangerous weapon not a predicate offense under G. L. c. 276, § 58A).
            The Commonwealth, likewise, has not argued that the charge of using tear gas in the commission of a crime, in violation of G. L. c. 269, § 10C, is a qualifying offense under Section 58A. Here, however, the question is close. The offense of using tear gas, under G. L. c. 269, § 10C, has three elements. To violate the statute, one must: (1) use (2) tear gas cartridges, or any device or instrument which contains a liquid, gas, powder, or any other substance designed to incapacitate (3) for the purpose of committing a crime. G. L. c. 269, § 10C. It is not difficult to envision a circumstance in which an offender, planning to break into an unoccupied warehouse late at night, carries a cannister of pepper spray to ward off apprehension and ends up using the cannister only to prop open a window. Arguably, the offender’s conduct satisfies all three elements of the offense. The offender likely would argue that the offender has not “use[d]” the prohibited device for the prohibited purpose – that is to “incapacitate” or threaten to incapacitate. G. L. c. 269, § 10C. Such an argument, however, likely would fail. In any event, as the Commonwealth has not argued that the use of tear gas in violation of G. L. c. 269, 10C, is a qualifying offense under Section 58A, I am not asked to resolve the issue presented by the hypothetical scenario.
            Finally, I observe that, were the defendant charged with a qualifying offense under Section 58A, I would have no difficulty concluding that he poses a danger to one or more members of the public – a point that the defendant expressly did not contest at arraignment. Further, given his alleged conduct in April 2024 and at the Woburn District courthouse on April 14, 2025, I would conclude that there are no conditions of release that could reasonably assure the public’s safety. If, therefore, the defendant were
 
                                                            -6-
 
charged with a qualifying offense, I would hold him without bail pending trial, pursuant to G. L. c. 276, § 58A. As he is not, however, I cannot.
2. Release on Bail
            As the defendant is not subject to pretrial detention under Section 58A, I must determine whether bail is required to assure his return to court to answer the charges against him. I start with the presumption that the defendant is entitled to be released on his own recognizance. Walsh v. Commonwealth, 485 Mass. 567, 583-584 (2020). The Commonwealth can rebut this presumption, however, by demonstrating that the defendant has “a history of prior court defaults or [by presenting] evidence that the defendant poses a flight risk, or [that] the other factors listed in the bail statutes . . .” counsel imposition of a bail. Id.
            Further,  I  am  aware  that,  if  I  determine  that  bail  is  necessary  to  assure the defendant’s return to court, I must consider the defendant’s financial resources. Brangan
v. Commonwealth, 477 Mass. 691, 701 (2017). Although I may set a bail in an amount greater than the defendant can afford, I must “consider[] all of the relevant circumstances” and must conclude that “neither alternative nonfinancial conditions nor an amount the defendant can afford will adequately assure his appearance for trial” and must set bail “no higher than necessary to ensure the defendant’s appearance.” Id. at 701.
            At the threshold, I conclude that the credible allegations in the instant indictment of the defendant’s alleged conduct on the day of his April 14, 2025, scheduled appearance at Woburn District Court are sufficient to overcome the presumption of release on personal recognizance. The defendant argues – in a contention that is technically correct – that the defendant’s criminal history before the alleged offenses in this indictment reflects no defaults. The argument, however, requires me to overlook the credible allegations that, on April 14, 2025, the defendant: arrived at the Woburn District Court courthouse wearing a helmet and gas mask; used pepper spray on the
 
                                                            -7-
 
court officer who attempted to stop him from entering the courthouse; and then pepper- sprayed three other court officers who sought to restrain him. Although it is unclear whether the defendant was formally defaulted on April 14, 2025, in the Woburn District Court, it is manifest that he did not appear with an intention to address the charges against him.
            Further, the defendant’s conduct on April 14, 2025, in Woburn – in light of the plausible evidence that he suffers from mental illness – is sufficient to justify setting a bail amount in excess of what the defendant can afford.2 The police reports that were submitted by the Commonwealth, without objection, as evidence in support of the motion for pretrial detention indicate that the defendant suffers from mental illness and that the Stoneham Police have regularly been called to address bizarre and violent conduct by the defendant. I, therefore, conclude that the defendant suffers from some form of mental illness, the nature of which is not clear.
            Taking the defendant’s alleged assault on his neighbor in April 2024 and on officers sent to arrest him for that conduct – as well as his conduct at the Woburn District Court on April 14, 2025 – in light of the plausible evidence that the defendant suffers from mental illness, I conclude that the defendant is unable to understand, or unwilling to comply with, his obligation to appear in court prepared to answer to pending charges. I further conclude, therefore, that a bail well in excess of what he can afford is necessary to assure his attendance in court. I, therefore, order the defendant held in lieu of $100,000 (one hundred thousand dollars) cash bail.
 
--------------------------------------------
 
            [2] As is usually the case, at arraignment, I lack sufficient evidence to determine with confidence how much the defendant could afford to post as bail. His counsel asserted at arraignment that the defendant’s mother could afford to post, at most, one thousand dollars as bail. Aside from the representation of counsel – who, I presume, is accurately reporting what he has been told – I have no reliable information about the defenant’s resources. For the purposes of my decision, however, I assume that the defendant has access only to his mother’s one thousand dollars to post as bail.
                                                            -8-
 
3. Stay of Order
            Because of the novelty of some of the issues presented in the Commonwealth’s motion for pretrial detention, I hereby STAY my ORDER until the close of business tomorrow (Tuesday, September 9, 2025) to allow either party to appeal it. My order shall go into effect at the close of business tomorrow unless at least one of the parties, in the interim, secures a further stay from a court of competent jurisdiction.
CONCLUSION
            For the reasons set out, supra, I hereby ORDER that the defendant be held in lieu of $100,000 (one hundred thousand dollars) cash bail. This ORDER is STAYED until the close of business tomorrow (Tuesday, September 9, 2025), during which time the defendant will continue to be held without bail. The ORDER will go into effect at the close of business on Tuesday, September 9, 2025, unless, before then, a party has secured a further stay from a court of competent jurisdiction.
/s/David A. Deakin
Associate Justice
Dated:
September 8, 2025